The next case is United States v. Brack. Thank you very much. I'd like to present the appellant Elgin Brack. I want to work backwards through my brief. Point five is conceded by the government, so I'd like to start at point four, the right to present a defense issue. There were four incidents all caught on security video, all showing the perpetrator pulling out a gun with his right hand and committing the crimes with a gun in his right hand. None of the victims were able to identify, even attempted to identify Mr. Brack as the perpetrator. The primary issue was the identity of Mr. Brack as the perpetrator. The defense sought to establish with video of its own so that the jury could see both the video of the perpetrator moving, holding a gun, brandishing the gun, comparing that with video of the defendant, an unscripted video of the defendant with his left hand handcuffed to a bar, being handed a pen in his right hand, and moving the pen to his left hand to sign a document. How is that not redundant to the testimony of the agent who was taking that statement, who said he signed with his left hand, he was left-handed, that wasn't disputed. How would the video have helped other than to show that he was left-handed? I have a couple of responses to that, Your Honor, because I know that that's certainly the position that the prosecution took and that the district court took. The video is different in kind. And perhaps even more importantly, why does the prosecutor get to decide how the defense wants to establish this critical issue? It was important to the jury. They wanted to see and feel and handle the gun. The only reason for that had to do with how it was, I guess, right-handed versus left-handed. That's the issue. It goes to the identity. What does the prosecutor get to put their witness on and then in direct examination say, what did he sign the document with, his left hand? And then the defense is precluded because it's cumulative, that the defense doesn't have an opportunity to use what is a completely different point of view. This is an unscripted video. What do you make of the fact that he was, in fact, shackled during the video? And I take it your point is that the shackling in part makes it more probative for the defense because it shows that even though he was shackled, he still wanted the pen in his left hand. But on the other hand, the district courts are generally called upon to take great precautions to prevent the jury from seeing the defendant shackled, right? You don't want them handcuffed in court or shackled unless there's a dire security issue because we're worried that the jury could draw another inference, which is that they are so dangerous they need to be chained up, and that that could have had serious prejudicial effect against your client. Recognizing that there are pluses and minuses and that, in the end, the district court has to balance those all and we reviewed only for abuse of discretion, why could you explain, given the pluses and minuses, that this was necessarily an abuse of discretion by the court? It was an abuse of discretion because it violated the defendant's right to provide a meaningful defense in the way that they thought was most compelling and would have the greatest effect upon a jury. So it wasn't the prosecution seeking to introduce this, it was the defense. The defense certainly had seen the video, knew how it appeared, but there wasn't any question that Mr. Brack had been placed under arrest. It's not unusual for someone to be handcuffed after they're placed under arrest. The defense wasn't concerned about this. That's an interesting point. Is there any case law on our part where we say that if the defendant's not worried about prejudice to his own interests in the balancing test, that the district court can't independently weigh them? Certainly the district court has the ultimate authority over the fairness of the proceeding. Of course that's the case. This goes to the heart of the ability to present the defense and that's what's so troubling about it. The testimony that he used his left hand is not the same as watching him. When you're able to compare an unscripted video of the defendant and compare it to an unscripted video of the incident itself and to be able to make that comparison with your own eyes, it's simply not the same to say, well, we put in testimony, the government arguing, we put in testimony and, therefore, anything that the defense wants to do is simply cumulative and they shouldn't be able to do it. The defense, I think, in terms of weighing out the right to present a defense, a fundamental constitutional right against the judge's discretion to balance out the fairness of the proceeding, I would urge the court that the right to present a defense should prevail. Unless there's additional questions on that point. How was it argued in summation, the importance of the left-handed? How did the defense use the fact that he is left-handed in summation? The defense used what was permitted to go into evidence, but they weren't. I think the summation would have been quite different. It certainly would have been had I been trying the case because I would have played that video for the jury. Say, look at this. You can see the person and you can make a determination as to whether it's the same person in the video of the incidents themselves. That's why we think it's so critical. So the defense was limited in their ability to argue. They certainly argued it, but they were limited. Moving backwards again, now to point three, the inventory search. The government has the burden. I don't think there's a question here. The government has the burden of proving a valid inventory search, that there was protocols in place, that they were followed. The government is here arguing that an attachment to a pleading is the same as evidence. And here's the problem that I have that I'm bringing to the court. The protocol, the inventory protocol, that there were testimony, yes, we followed a protocol. But what the protocol was, was never introduced into evidence. And an attachment to a pleading is not evidence in a hearing. Well, wasn't the protocol offered as a piece of evidence attached to a pleading? And wasn't there testimony about the existence of the protocol? And I understand the argument that in this case the inventory was completed much later than the policy called for. But wasn't there testimony to go along with the existence of the protocol and then the protocol attached to the pleading? But the protocol was not introduced into evidence. It was not offered into evidence at the hearing. Does it have to be? I mean, under the federal rules of evidence? Sure. Or can it just be proffered? Does it have to be literally marked as an exhibit? Or is the court allowed to, you know, accept things by proffer? And then where the court thinks it needs to be tested through, you know, direct or cross-examinated? But it wasn't proffered. Well, if it's attached to a pleading. If you're relying on something, the government has to prove not only that an officer says, I followed a protocol, the protocol itself needs to be introduced into evidence. This is what the protocol is. Let's say as preparatory to a suppression hearing, the parties, and let's say the defense, staples as exhibits, attachments to its motion to suppress, all the police reports, and the inventory sheets, and, you know, chain of custody reports, and, you know, all sorts of things that were turned over in discovery. Are you saying the court can't consider those unless they're separately marked as exhibits during a hearing? Yes. Something is not in evidence until it's introduced and accepted by the court into evidence. Something isn't simply in evidence. Where do we draw the line on that? That anything that someone may have mentioned, any attachment and any pleading anywhere along the way, is now part of the evidence at a hearing or a trial? That's certainly not the rule. Something has to be introduced. Was it introduced along the way or was it introduced in connection with the motion relating to this issue? So, in other words, it wasn't just at some point during the litigation attached to an affidavit. There's a protocol attached. It was specifically in connection with the motion or the hearing on the motion to suppress the evidence taken as part of that inventory. Correct? Of course. Of course. But not everything that you put in your papers is part of the evidence at a trial. That's why there's procedures when you're doing a hearing or a trial. There might be a stipulation that we stipulate a certain document into evidence, and then a witness can testify that this is the protocol and I followed that protocol. But to just say that anything that anybody files at any time along the way is part of the evidence, I mean, could I argue that in front of a jury? It's in evidence. It's in evidence because somebody filed it and, therefore, I can argue it to a jury. I'd be shut down immediately and say you never introduced that. Now, I understand that you were not counsel below, but do you know in the record, is there any indication that this particular objection was raised, that it wasn't properly before the court in evidence? I don't think anybody addressed the issue at all. But on appeal, we look at the record and what the evidence is and does the evidence support the position that the government is taking, which is that there was a proper inventory search. There are procedures that have to be followed, and it is the burden of the government to do it. And if they failed, for whatever reason, to introduce a critical piece of evidence into the record, that's on them. Well, let's assume we agree with you hypothetically that there needed to be a formal exhibit sticker during the suppression hearing on the protocol. What about the testimony of the federal agent about his agency's protocol to conduct an inventory search? His testimony was simply that there was a protocol, not what it was. A protocol to conduct an inventory search, no? Yes, it was summary and conclusory. Yes, we had a protocol. Yes, I followed it. What was the protocol? Why is it not enough, though? Because there's no evidence of what that protocol is, because the court would have to determine whether the protocol was legally sufficient to justify an inventory search. You can't just call something a protocol and put a deli menu on it and say that's our protocol and we followed it. There has to be specifics in the protocol that the court would approve as constitutional or proper to justify an inventory search. Is it the case law that there just needs to be some evidence that that particular agency, as part of their processing when they seize a vehicle, that they conduct an inventory search? In summary and conclusory form, I would argue no. The government has the burden. Do you have a case to support the statement you just made that testimony from an agent of the agency is insufficient in and of itself? But there wasn't testimony. My point here and the argument I'm making, perhaps I'm not being clear, is that the- I understand your position is the quality of the testimony or the quantity and sufficiency of the testimony. My question is, is there a case that says if an agent just gets up and says there's a protocol whenever we seize a vehicle we conduct an inventory search. Is there a case that says that's not enough, you need the actual protocol? I don't have a case for you that says that. The Mendez case, which is cited in my brief, does state that the burden is on the government to establish that there was a protocol and that the protocol was followed. And my point to the court this morning is that the conclusory testimony of the officer without introducing the protocol itself or any testimony about what's in the protocol is not sufficient to establish that burden. Thank you. I know I'm out of time. I would love to keep moving backwards, but I'm out of time. Thank you very much, Your Honor. Thank you. We'll hear from the government. Thank you. May it please the court, Jonathan Siegel for the United States. I represented the government at both the suppression hearing and the trial. To start in the same order as Mr. Singer, I think there's two distinct issues that Mr. Singer is blending together here about the right to make a defense and the application of the rules of evidence. In terms of the ability to make the defense that Elgin Brack was left-handed, the defense did make that defense. It was, in fact, the primary defense, and it was made at summation. And this is on page 50 of our brief and page 1572 of the appendix. And I'm just going to quote from it. This is the summation of defense counsel. Elgin Brack is left-handed. There's no dispute of that. It was even corroborated by Special Agent Maselli. And I'm skipping a few sentences ahead. He acknowledged it and corroborated that Elgin is left-handed. So this defense was made, and any claim that the defendant was deprived of his ability to raise that defense is simply belied by the record. I think the argument here is sort of the reverse of an old case, an old chief, right, that the government is entitled to put on its case and to prove it in the way that it wants within the constraints of 403, albeit within those constraints, but that the defense can't stipulate away the emotional or visual or whatever other sort of force of the evidence. So the argument here is that it would have been a much more powerful defense to see the video and to see an individual, even though his left hand is very much an extremist right now, he's still going to transfer a pen to it in order to sign a document. I think that's exactly right, Your Honor. But that's exactly what I mean by this is separate from his ability to make the defense and his ability to admit the evidence under Rule 403. And the old chief recognizes that there are some limits on the ability of the defendant to force stipulations that take away the government's case. Wouldn't it work in the reverse, too? Well, but the actual holding of old chief is that there are, that there can be cases where something is undisputed and therefore has basically no probative value and that if there is prejudice from that, it can be excluded under Rule 403, which is exactly what old chief decided. And why is its approach, its holding, essentially applicable here? Because in this case, there was no dispute that the defendant was left-handed. And Mr. Singer said that this was something that the government brought out. The government shouldn't be able to call its agent and say he's left-handed. That's not what happened here. The defense called the agent, and the defense asked, do you recall what hand he used to sign? And the agent said, I do recall it was his left hand. After that, the defense tried to play the video, and the district court properly said, there's no dispute about what happened here. He said he used his left hand. The only thing this video would show is that he used his left hand, so there's no probative value. But there is the risk of prejudice. In addition to the, as Judge Nardini pointed out, he shackled to the wall, which could potentially prejudice the defendant but could also potentially prejudice the government. There are jurors who could be inflamed by the idea that this person was not just handcuffed but shackled to a wall. It could also confuse the jury. This is a video from a post-arrest statement that was not introduced at trial that could confuse the jury or raise the question of, well, what was said at that post-arrest, and why aren't we seeing it? But the district judge, in deciding to keep it out, cited confusion to the jury about what was discussed during the video. The defense claims it offered to introduce the video without sound. Is that accurate? It's accurate that the defense offered to do that. With the removal of the sound, is your claim still that it would be prejudicial to either the defense because he was shackled to a wall or potentially to the government because he was shackled to a wall? The issue remains of the prejudice potentially to both parties from him being shackled to the wall. And even if it's played without audio, you can see that this is a video of him speaking to law enforcement. If there's law enforcement around, he's speaking to them. And even without audio, the jury will see that, and playing it without audio suggests to them that something is being kept from them. And so the district court acted within its discretion in weighing the fact that there was no probative value. The fact that needed to be proved of his left-handedness was undisputed, and there was ample evidence of that fact. And there was risk of prejudice, and the district court appropriately weighed those things and acted to exclude that particular. So at that point, this was during the defense case, but the defendant hadn't testified, so any prior statements he made would not have been admissible? So this first came up during the government's case. The government called the agent to testify about other matters. On cross-examination, the defense asked him about this instance where he had signed with his left hand. Subsequently, the defendant testified, and testified again to the same incident. He said, I was shackled, I was handcuffed, my left hand was handcuffed, I still used my left hand because I am myself left-handed. So at that point, when the defendant, did he testify about the extent to which, why he was there, and that he was providing a statement? Because then that would eliminate that potential prejudice about the jury being confused why he was talking to law enforcement. So this is on, it's in page 1130 of the appendix, and on page 49 of the government's brief. The defendant testified that he met Special Agent Maselli, and that he was asked to sign something. The defendant said he was asked to sign his rights, his Miranda rights. He said he used his hand. He was asked, which hand did you use? And he said, my left hand. He said, yes, I'm definitely left-handed. So once that evidence is in, the scene has been described, and the probative value of it is non-existent. Because the fact that he needed to establish of his left-handedness, and the theory that the person on the video is using his right hand and that couldn't be me, that was established, it was never contested. The argument from the government in response was not, he's not left-handed, you should disregard it. It's that you can hold a gun in either hand. And as Mr. Singer noted, the jury did ask for the opportunity to hold the gun and see the gun. The gun was provided to the jury as part of their deliberations, and they had the opportunity to see that you can hold the gun in both hands. Moving on to the inventory search point, like Mr. Singer, I am not aware of any case that suggests that an exhibit to a motion cannot be considered in the decision on that motion. In this case, it was attached as an exhibit to the opposition to the motion to suppress, precisely to rebut the argument that there was no policy calling for this inventory. The lieutenant who was in charge of the entire NYPD side of this task force testified that a protocol existed, that it was regularly followed, and there was no objection to the district court ever considering it either at the hearing, when it was attached to the motion, in the post-suppression hearing briefs, or in the post-trial briefs that re-litigated some of these same issues. Under those circumstances, Judge Vitaliano was amply within his discretion to consider that evidence and rely on it, as he did. And with that, your honors, unless the court has any further questions, we will rest on our papers. Thank you. Mr. Singer? Yes. No, I did not have rebuttal. Oh, no rebuttal. All right. I'm happy to keep talking, but I did not reserve it. We'll take the matter under advisement. Thank you both.